IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA | ) |
| | ) |
| v. | ) CRIMINAL NO. 22-00158-KD |
| | ) |
| KELLEY ANN KANN, | ) |
| aka KELLEY ANN LANGHAMER | ) |

**PLEA AGREEMENT**

The defendant, **KELLEY ANN KANN aka KELLEY ANN LANGHAMER**, represented by her counsel, and the United States of America have reached a plea agreement in this case, pursuant to Rule 11 of the Federal Rules of Criminal Procedure, the terms and conditions of which are as follows:

**RIGHTS OF THE DEFENDANT**

1. The defendant understands her rights as follows:

    a. To be represented by an attorney;

    b. To plead not guilty;

    c. To have a trial by an impartial jury;

    d. To confront and cross-examine witnesses and to call witnesses and produce other evidence in her defense; and

    e. To not be compelled to incriminate herself.

**WAIVER OF RIGHTS AND PLEA OF GUILTY**

2. The defendant waives rights b through e, listed above, and pleads guilty to Counts One and Fourteen of the Indictment, charging violations of Title 18,

1

United States Code, Sections 1343 (Wire Fraud) and 1028A(a)(1) (Aggravated Identity Theft), respectively.

3. The defendant understands that the statements she makes under oath in the plea of guilty must be completely truthful and that she can be prosecuted for making false statements or perjury, or receive a perjury enhancement at sentencing, for any false statements she makes intentionally in this plea of guilty.

4. The defendant expects the Court to rely upon her statements here and her response to any questions that she may be asked during the guilty plea hearing.

5. The defendant is not under the influence of alcohol, drugs, or narcotics. She is certain that she is in full possession of her senses and is mentally competent to understand this Plea Agreement and the guilty plea hearing that will follow.

6. The defendant has had the benefit of legal counsel in negotiating this Plea Agreement. She has discussed the facts of the case with her attorney, and her attorney has explained to the defendant the essential legal elements of the criminal charges that have been brought against her. The defendant's attorney has also explained to the defendant the attorney's understanding of the United States' evidence and the law as it relates to the facts of her offenses.

7. The defendant understands that the United States has the burden of proving each of the legal elements of the criminal charges beyond a reasonable doubt. The defendant and her counsel have discussed possible defenses to the charges. The defendant believes that her attorney has represented her faithfully, skillfully, and diligently, and she is completely satisfied with the legal advice of her attorney.

8. A separate document, entitled Factual Resume, will be submitted to the Court as evidence at the guilty plea hearing. The Factual Resume is incorporated by reference into this Plea Agreement. The defendant and the United States agree that the Factual Resume is true and correct. Alterations to the Plea Agreement or Factual Resume initialed only by the defendant and her counsel are not part of this agreement and are not agreed to by the United States.

9. This plea of guilty is freely and voluntarily made and is not the result of force, threats, promises, or representations, apart from those representations set forth in this Plea Agreement. There have been no promises from anyone as to the particular sentence that the Court will impose. The defendant is pleading guilty because she is guilty.

10. The defendant also knowingly and voluntarily waives all rights, whether asserted directly or through a representative, to receive from the United States after sentencing any further records, reports, or documents pertaining to the investigation or prosecution of this matter. This waiver includes, but is not limited to, rights under the Freedom of Information Act and the Privacy Act of 1974.

## PENALTY

11. The maximum penalty the Court could impose as to Count One of the Indictment is:

   a. Twenty (20) years' imprisonment;

   b. A fine not to exceed $250,000;

      c.    A term of supervised release of three (3) years, which would follow any term of imprisonment. If the defendant violates the conditions of supervised release, she could be imprisoned for the entire term of supervised release;

      d.    A mandatory special assessment of $100.00; and

      e.    Such restitution as may be ordered by the Court.

12.    The maximum penalty the Court could impose as to Count Fourteen of the Indictment is:

      a.    A mandatory term of two (2) years' imprisonment, which must run consecutively to any other term of imprisonment imposed on the defendant;

      b.    A fine not to exceed $250,000;

      c.    A term of supervised release of one (1) year, which would follow any term of imprisonment. If the defendant violates the conditions of supervised release, she could be imprisoned for the entire term of supervised release;

      d.    A mandatory special assessment of $100.00; and

      e.    Such restitution as may be ordered by the Court.

## SENTENCING

13.    The Court will impose the sentence in this case. The United States Sentencing Guidelines are advisory and do not bind the Court. The defendant has reviewed the application of the Guidelines with her attorney and understands that no one can predict with certainty what the sentencing range will be in this case until after a pre-sentence investigation has been completed and the Court has ruled on the results of that investigation. The defendant understands that at sentencing, the Court may not necessarily sentence the defendant in accordance with the Guidelines. The

4

defendant understands that she will not be allowed to withdraw her guilty plea if the advisory guideline range is higher than expected, or if the Court departs or varies from the advisory guideline range.

14. The defendant understands that this Plea Agreement does not create any right to be sentenced in accordance with the Sentencing Guidelines, or below or within any particular guideline range, and fully understands that determination of the sentencing range or guideline level, or the actual sentence imposed, is solely the discretion of the Court.

15. The United States will provide all relevant sentencing information to the Probation Office for purposes of the pre-sentence investigation. Relevant sentencing information includes, but is not limited to, all facts and circumstances of this case and information concerning the defendant's conduct and background.

16. Both the defendant and the United States are free to allocute fully at the time of sentencing.

17. The defendant agrees to tender $200.00 to the U.S. District Court Clerk in satisfaction of the mandatory special assessment in this case. The United States reserves the right to withdraw any favorable recommendations it may agree to within this document if the defendant fails to pay the special assessment prior to or at the time of her sentencing.

## RESTITUTION

18. Pursuant to 18 U.S.C. §§ 3556 and 3663A, restitution is mandatory. The defendant agrees to make full restitution in the amount of **$286,307.73**.

## FORFEITURE

19. The defendant agrees to confess the forfeiture to the United States of all properties that represent proceeds of her criminal activities or that facilitated any aspect of these illegal activities.

20. The defendant acknowledges that a Money Judgment is due to be entered against her in the amount of no less than **$286,307.73**.

## FINANCIAL OBLIGATIONS

21. The defendant expressly authorizes the U.S. Attorney's Office to obtain a credit report in order to evaluate the defendant's ability to satisfy any financial obligation imposed by the Court. In order to facilitate the collection of financial obligations to be imposed in connection with this prosecution, the defendant agrees to disclose fully all assets in which the defendant has any interest or over which the defendant exercises control, directly or indirectly, including those held by a spouse, nominee or other third party.

## UNITED STATES' OBLIGATIONS

22. The United States will not bring any additional charges against the defendant related to the facts underlying the Indictment and will move to dismiss any remaining charges against the defendant once sentence is imposed in this case. This agreement is limited to the United States Attorney's Office for the Southern District of Alabama and does not bind any other federal, state, or local prosecuting authorities.

23. The United States will recommend to the Court that the defendant be sentenced at the low end of the advisory sentencing guideline range as determined by the Court.

## LIMITED WAIVER OF RIGHT TO APPEAL AND WAIVER OF COLLATERAL ATTACK

24. As part of the bargained-for exchange represented in this plea agreement, and subject to the limited exceptions below, the defendant knowingly and voluntarily waives the right to file any direct appeal or any collateral attack, including a motion to vacate, set aside, or correct sentence under 28 U.S.C. § 2255. Accordingly, the defendant will not challenge her guilty plea, conviction, or sentence in any district court or appellate court proceedings.

   a. **EXCEPTIONS.** The defendant reserves the right to timely file a direct appeal challenging:

      (1) any sentence imposed in excess of the statutory maximum;

      (2) any sentence which constitutes an upward departure or variance from the advisory guideline range.

   The defendant also reserves the right to claim ineffective assistance of counsel in a direct appeal or § 2255 motion.

25. If the United States files a notice of appeal and such appeal is authorized by the Solicitor General, the defendant is released from the appellate waiver.

26. The defendant further reserves the right to timely move the district court for an amended sentence under 18 U.S.C. § 3582 in the event of a future retroactive amendment to the Sentencing Guidelines which would affect the sentence.

27. If the defendant receives a sentence within or below the advisory guideline range, this plea agreement shall serve as the defendant's express directive to defense

counsel to timely file a "Notice of Non-Appeal" following sentencing, signed by the defendant.

## VIOLATION OF AGREEMENT

28. The defendant understands that if she breaches any provision of this Plea Agreement, the United States will be free from any obligations imposed by this agreement, but all provisions of the agreement remain enforceable against the defendant. In the exercise of its discretion, the United States will be free to prosecute the defendant on any charges of which it has knowledge. In such event, the defendant agrees not to assert any objections to prosecution that she might have under the Sixth Amendment and/or Speedy Trial Act.

29. In addition, if the defendant is released from detention prior to sentencing, she understands that the United States will no longer be bound by this agreement if she violates any condition of her release prior to sentencing or prior to serving her sentence after it is imposed.

## ENTIRETY OF AGREEMENT

30. This document is the complete statement of the agreement between the defendant and the United States and may not be altered unless done so in writing and signed by all the parties.

Respectfully submitted,

SEAN P. COSTELLO
UNITED STATES ATTORNEY

Date: November 22, 2022

Justin D. Roller
Assistant United States Attorney

Date: 11-22-22

Kasee S. Heisterhagen
Assistant United States Attorney
Deputy Chief, Criminal Division

I have consulted with my counsel and fully understand all my rights with respect to the offenses charged in the Indictment pending against me. I have read this Plea Agreement and carefully reviewed every part of it with my attorney. I understand this agreement, and I voluntarily agree to it. I hereby stipulate that the Factual Resume, incorporated herein, is true and accurate in every respect, and that had the matter proceeded to trial, the United States could have proved the same beyond a reasonable doubt.

Date: 12-19-2022

X Kelley Kann
Kelley Ann Kann
Defendant

I am the attorney for the defendant. I have fully explained her rights to her with respect to the offenses charged in the Indictment in this matter. I have carefully reviewed every part of this Plea Agreement with her. To my knowledge, her decision to enter into this agreement is an informed and voluntary one. I have carefully reviewed the Factual Resume, incorporated herein, with the defendant and to my knowledge, her decision to stipulate to the facts is an informed, intelligent and voluntary one.

Date: 12/12/22

Fred W. Tiemann
Attorney for Defendant

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA | ) |
| | ) |
| v. | ) CRIMINAL NO. 22-00158-KD |
| | ) |
| KELLEY ANN KANN, | ) |
|    aka KELLEY ANN LANGHAMER | ) |

## FACTUAL RESUME

The defendant, **KELLEY ANN KANN** aka **KELLEY ANN LANGHAMER** ("**KANN**"), admits the allegations of Counts One and Fourteen of the Indictment.

## ELEMENTS OF THE OFFENSE

**KANN** understands that in order to prove a violation of Title 18, United States Code, Section 1343, as charged in Count One of the Indictment, the United States must prove:

First: the defendant knowingly devised or participated in a scheme to defraud someone by using false or fraudulent pretenses, representations, or promises;

Second: the false pretenses, representations, or promises were about a material fact;

Third: the defendant acted with the intent to defraud; and

Fourth: the defendant transmitted or caused to be transmitted by wire some communication in interstate commerce to help carry out the scheme to defraud.

**KANN** further understands that in order to prove a violation of Title 18, United States Code, Section 1028A(a)(1), as charged in Count Fourteen of the Indictment, the United States must prove:

First: the defendant knowingly transferred, possessed, or used another person's means of identification;

Second: without lawful authority; and

1

Third:  during and in relation to the eligible felony alleged in the Indictment—namely, wire fraud as charged in Count One.

## OFFENSE CONDUCT

**KANN** admits in open court and under oath that the following statement is true and correct and constitutes evidence in this case. This statement of facts is provided solely to assist the Court in determining whether a factual basis exists for **KANN's** plea of guilty. The statement of facts does not contain each and every fact known to **KANN** and to the United States concerning the defendant's involvement in the charges set forth in the plea agreement. All dates, amounts, and locations referenced below are approximations.

### Overview

At all times relevant to the Indictment, **KANN** was employed at The Weavil Company, LLC ("Weavil Co."), a commercial real estate business based in Mobile, Alabama. Weavil Co. is owned by an individual identified in this Factual Resume as "R.W." In July 2018, **KANN** fraudulently obtained Capital One credit cards using the personal identifiable information ("PII") of R.W.'s spouse, who is identified in the Indictment and this Factual Resume as "L.W." **KANN** obtained some cards in L.W.'s name and some in her own name as a purported "authorized second user." **KANN** used those fraudulently obtained credit cards to make hundreds of unauthorized purchases of goods and services for her own personal benefit and without Weavil Co.'s authorization. **KANN** then paid the Capital One credit card bills via dozens of unauthorized automated clearing house ("ACH") transfers from the bank accounts of Weavil Co. and certain affiliated companies, causing a total loss of $286,307.73.

### KANN's role at Weavil Co. & opening of fraudulent Capital One credit card account

**KANN** worked for Weavil Co. as an office administrator and bookkeeper. That role was a position of financial trust that granted **KANN** access to Weavil Co.'s financial information and payment mechanisms, allowing her to conduct financial transactions on behalf of Weavil Co., which maintained federally insured bank accounts at Branch Banking & Trust Company / Truist Bank ("BB&T") and Regions Bank ("Regions"). Additionally, R.W. operated companies affiliated with Weavil Co., including an apartment management business called CHA, Inc. ("CHA") and a real estate investment company called Hillcrest Land Company, LLP ("HLC"). CHA maintained a federally insured bank account at Hancock Whitney Bank ("Hancock") and HLC maintained a federally insured bank account at Regions.

On July 6, 2018, **KANN** fraudulently opened a Capital One Walmart Mastercard credit card account using L.W.'s PII, including L.W.'s name, date of birth, and social security number. **KANN** linked her own address in Spanish Fort, Alabama, and her own Yahoo email account with the Capital One account. On recorded phone calls that **KANN** made to Capital One's customer service line, **KANN** falsely represented herself as L.W. and provided L.W.'s PII when prompted by Capital One representatives.

### KANN's fraudulent credit card transactions

As part of her fraudulent scheme, **KANN** made hundreds of unauthorized credit card transactions to the entities listed in paragraph 11(c) of the Indictment, among others, which were not for the business purposes or benefit of Weavil Co. and benefitted **KANN**, or her personal associate, personally and directly. Records from various entities listed in the Indictment reflect that these fraudulent transactions were personal in nature and benefitted only **KANN**, not Weavil Co.

On October 14, 2019, **KANN** fraudulently used a Capital One Walmart Mastercard credit card account in L.W.'s name to cause an unauthorized $248.39 payment to be made to Riviera Utilities to pay the utilities account for **KANN's** home in Spanish Fort, Alabama. Because Capital One's servers are located outside the state of Alabama, **KANN's** fraudulent transaction using the above-referenced Capital One card caused a wire communication to be sent in interstate commerce. In connection with this fraudulent transaction, and as alleged in Count One of the Indictment, **KANN** admits that (1) she knowingly devised and participated in a scheme to defraud someone by using false and fraudulent pretenses, representations, or promises; (2) her false and fraudulent pretenses, representations, and promises were about a material fact; (3) she acted with intent to defraud; and (4) she transmitted or caused to be transmitted by wire some communication in interstate commerce to help carry out the scheme to defraud.

**KANN** further admits, as alleged in Count Fourteen of the Indictment, that during and in relation to the above-referenced fraudulent transaction on October 14, 2019, (1) she knowingly transferred, possessed, and used L.W.'s means of identification (*i.e.*, L.W.'s name, date of birth, social security number, and credit card number); (2) without lawful authority; and (3) during and in relation to wire fraud as charged in Count One of the Indictment.

### KANN's fraudulent ACH transfers to pay fraudulent Capital One bills

To pay for her fraudulent transactions on the above-referenced Capital One credit cards, **KANN** regularly conducted unauthorized ACH transfers from Weavil Co.'s bank account and the bank accounts of its affiliated companies. In making these ACH transfers, **KANN** falsely represented that she was authorized to do so when the transfers in fact had no nexus to Weavil Co.'s business.

4

### KANN's confession & altered bank statements

On May 4, 2021, R.W. confronted **KANN** about the theft. **KANN** confessed to embezzling what she then claimed was only $20,000 of Weavil Co.'s money and wrote a handwritten statement admitting to the theft. In the statement, which **KANN** signed, she wrote the following:

> *I, Kelley Kann Langhamer, have stolen money from [R.W.] as well as the Weavil Company.*
>
> *I have taken money (stolen money) without permission.*
>
> *I swear that I will pay every cent back to both the Weavil Co. and [R.W.] – no matter how long it takes.*
>
> *I say these things knowing it is a mortal sin and swear on my life that I will make good on this.*
>
> *So Help Me God!*
>
> *Kelley K. Langhamer*

R.W. initially allowed **KANN** to remain employed at Weavil Co. After the meeting on May 4, 2021, however, **KANN** failed to provide R.W. with the financial statements for Weavil Co.'s accounts. When confronted, **KANN** told R.W. that she had not received any monthly statements on the accounts due to no recent transactions having been conducted on them. When R.W. pressed for the statements, **KANN** gave R.W. three fraudulent and altered statements on HLC's Regions account. The statements were doctored and did not accurately reflect the balance and transactions on the account. R.W. then conducted a thorough review of all four bank accounts associated with Weavil Co. and discovered the full amount of **KANN's** embezzlement. Shortly thereafter, **KANN** stopped reporting for work and did not repay any money to Weavil Co.

### Loss amounts

**KANN's** fraud resulted in a total loss to Weavil Co. of $184,292.69. **KANN** also caused losses to various financial institutions, some of which credited money back to Weavil Co. and its

affiliated companies. Those losses are as follows: (1) $14,500.00 to BB&T; (2) $10,014.45 to Capital One; and (3) $77,500.59 to Hancock. The total loss to all victims in this case as a result of **KANN's** fraud is **$286,307.73**, for which **KANN** admits she is criminally responsible.

AGREED TO AND SIGNED.

Respectfully submitted,

SEAN P. COSTELLO
UNITED STATES ATTORNEY

Date: November 22, 2022

Justin D. Roller
Assistant United States Attorney

Date: 11-22-22

Kasee S. Heisterhagen
Assistant United States Attorney
Deputy Chief, Criminal Division

Date: 12-19-22

X Kelley Kann
Kelley Ann Kann
Defendant

Date: 12/12/22

Fred W. Tiemann
Attorney for Defendant

6